**UNITED STATES of America,
Plaintiff,**

v.

**Ralph H. HERSHBERGER et al.,
Defendants.**

**Civ. A. No. W–4241.**

United States District Court,
D. Kansas.

Jan. 24, 1972.

Robert J. Roth, U. S. Atty., Edward H. Funston, Asst. U. S. Atty., Wichita, Kan., William D. M. Holmes, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff.

Thomas A. Wood, Wichita, Kan., for the Hershbergers.

William L. Harris, Jr., Chief Atty., Dept. of Revenue, Topeka, Kan., Jim Lawing, Wichita, Kan., for State of Kan., Dept. of Revenue.

## MEMORANDUM OF OPINION

WESLEY E. BROWN, Chief Judge.

This is a civil action in which the United States seeks to foreclose certain federal tax liens against the interest of Ralph G. Hershberger in property owned in joint tenancy by him and his wife. The wife, Esther, is resisting the foreclosure on the basis of the Kansas homestead exemption. The parties have stipulated to all the facts pertinent to the Court's decision, and the action is now before us on both parties' motions for summary judgment.

Briefly, the stipulated facts are these:

1. Defendants Ralph and Esther Hershberger are husband and wife and own as joint tenants certain described property of less than one acre in size located within the City limits of Wichita, Kansas. They occupy this property as their residence, and in addition, Esther asserts that she is the head of their household and that she occupies the property as a homestead under the Constitution and laws of Kansas.

2. On August 3, 1970, the United States obtained judgment against Ralph in the amount of $28,778.48, which represented his liability for unpaid income taxes for the years 1946 through 1957. Prior to the date of this judgment, default was entered against defendants County of Sedgwick, Kansas, and Lloyd B. Nucholls.

3. As of the date of this action, the judgment against Ralph is subject to the following stipulated priorities:

a) First Priority: United States, $16,735.76;

b) Second Priority: State of Kansas, $995.69;

c) Third Priority: United States, $7,576.73.

4. These liens attached to Ralph's property and rights to property, and specifically his undivided one-half interest in the described real property.

▇▇▇ Under the facts here, we conclude that the property is subject to the homestead exemption claimed by Esther.

The portion of the Kansas Constitution, Article 15 brought into focus by these proceedings is as follows:

"A homestead . . . of one acre within the limits of an incorporated . . . city, occupied as a residence by the family of the owner . . . shall be exempted from forced sale under any process of law

. . .; but no property shall be exempt from sale for taxes . . ."

The property was occupied as a residence by Ralph and Esther and Esther may assert homestead rights. See Helm v. Helm, 11 Kan. 19 (1873); Iowa Mutual Insurance Co. v. Parr, 189 Kan. 475, 370 P.2d 400 (1962):

"The fact that the ownership [in the property] was by co-tenancy does not deny the co-tenants the right to claim a homestead in the property." [Grant v. Mossman, 384 F.2d 496 (C.A.10, 1967); Cole v. Coons, 162 Kan. 624, 178 P.2d 997; Banner v. Welch, 115 Kan. 868, 225 P. 98.]

■ We have concluded that Esther's and Ralph's homestead right prevents the United States and Kansas from enforcing a tax lien for income taxes on the property. The tax claims of the United States and Kansas are admitted to be only against Ralph's one-half interest in the property. Thus, to permit the United States to enforce its lien by a sale of Ralph's half would require the sale of the full interest. We believe that the Government's "Solomon" suggested alternative of cutting the "child" in half is inappropriate here.

■ Under the present posture of the law it is clear that state law controls the determination of what is "property or rights to property" upon which a federal tax lien can attach. It is also clear that Congress and the Supreme Court recognize and give effect to state exemption laws in enforcing federal tax liens. See United States v. Brosnan, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960); Meyer v. United States, 375 U.S. 233, 84 S.Ct. 318, 11 L.Ed.2d 293.

Kansas has not spoken directly on whether or not a homestead can be subject to sale by virtue of income tax liens. The Oklahoma laws on homestead exemptions are similar to Kansas and the Court of Appeals of the Tenth Circuit has spoken in this regard. In Jones v. Kemp, 144 F.2d 478 (C.A.10, 1944) the *Jones* court said:

"The homestead right is a creature of the Constitution and statutes of Oklahoma. Although not an estate, it is a special and peculiar interest in land belonging to the husband and wife jointly and indivisibly—neither may be divested of his or her interest therein without the consent of both. [Citations omitted.] It follows therefore that a wife is granted an indivisible and vested interest in homestead property, and one which cannot be subjected to levy and sale for the satisfaction of the Federal tax liability of her husband."

In defining the homestead exemption, the Kansas court in Iowa Mutual Insurance Co. v. Parr, 189 Kan. 475, 370 P.2d 400 (1962), said,

"The Kansas Constitution and the legislature have declared a homestead to be exempt. The homestead cannot be subjected to forced sale to satisfy debts except in the following situations: (1) To pay taxes; (2) to pay obligations contracted for the purchase of the homestead; (3) to pay obligations contracted for the erection of improvements on the homestead; or (4) any process of law obtained by virtue of a lien given by the consent of both husband and wife."

The *Parr* case involved an unsuccessful attempt to create a lien on a homestead by virtue of a waiver of lien in an indemnity agreement. But, because there was no valid lien on the property when the waiver was made the homestead right survived. In explaining the effect of the judgment in *Parr* the Kansas Court said,

"Here the judgment rendered was for an amount certain. It was not rendered for taxes, or for the payment of obligations contracted for the purchase of the homestead, or for the erection of improvements on the homestead, or by virtue of a lien given by joint consent of the husband

and wife. It was an ordinary money judgment, and like any ordinary money judgment, it became a lien upon the real estate of the judgment debtors from the first day of the term at which the judgment was rendered. Upon compliance with 60–3601, supra, by the trial court in this case, the judgment would remain unsatisfied until such time as the appellants receive their discharge in bankruptcy. Thereafter, the judgment would be deemed to have been fully discharged and satisfied."

The Government would have us determine that the statements in *Parr* require a conclusion that the Kansas Court would hold that its lien is for taxes, comes within the exemption and may be foreclosed. To carry out such a contention would require us to hold that the words, "no property shall be exempt from sale for taxes . . ." includes not only taxes levied against the property itself, but all forms of taxes when unpaid.

The Government would have us follow the reasoning of United States v. Overman, 424 F.2d 1142 (C.A.9, 1970). The *Overman* Court held,

"In the order from which this appeal has been taken the district court decided that the Government had a valid lien on the taxpayer's undivided one-half interest in the marital community, that the lien was enforceable against the community assets as to which foreclosure was sought, and that the Government was not precluded from enforcing its lien by limitations or laches, or by the doctrines of res judicata, estoppel, or waiver. We affirm the order.

\* \* \* \* \* \*

Section 6321 of the Internal Revenue Code (26 U.S.C. § 6321) provides that the amount of the delinquent taxpayer's liability 'shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.' The statute incorporates state law for the limited purpose

of ascertaining whether or not the taxpayer's interest is 'property' or 'rights to property.' (Aquilino v. United States (1960) 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365; United States v. Bess (1958) 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135.) If state law raises the taxpayer's interest to the status of property or rights to property, federal law will cause a lien to attach to that interest. We must thus turn to Washington law to determine whether the taxpayer's interest in the community property constitutes 'property' or 'rights to property' belonging to him. We believe that it does."

There is no question here but that the Government has a tax lien but as said in *Overman,*

"The attachment of a tax lien under section 6321 and the enforcement of the lien under section 7403 of the Code present different questions. From the conclusion that a lien attaches, the further conclusion that these particular liens may be foreclosed or otherwise enforced in a particular law manner does not automatically follow."

\* \* \* \* \* \*

"Once the lien has been established, the statute empowers the district court to subject the whole of the property in which the delinquent taxpayer has an interest to a forced sale. The power is not limited to the sale of only the delinquent taxpayer's interest. (United States v. Trilling (7th Cir. 1964) 328 F.2d 699, 703; accord, Washington v. United States (4th Cir. 1968) 402 F.2d 3, cert. filed (Dec. 13, 1968) 38 U.S.L.W. 3001 (no. 22); United States v. Mosolowitz (D.Conn. 1967) 269 F.Supp. 12. *Contra,* Folsom v. United States (5th Cir. 1962) 306 F.2d 361, 367.) Thus, the statute contemplates that the district court may subject the interests of persons other than the taxpayer to an involuntary conversion during the course of enforcing the Government's lien on the delinquent taxpayer's interest in

the same property. The owners other than the taxpayer, however, are entitled to just compensation from the proceeds of the sale for that 'taking.'

We emphasize that section 7403 is cast in mandatory terms only in respect of the establishment of the Government's lien, the joinder of all persons interested in the property involved, and the determination of their respective interests. The remainder of the section confers broad discretionary powers upon the court in shaping a decree designed to work substantial justice among all interested persons. 'Congress [in enacting § 7403] intended that the Court function with the full traditional flexibility of the Chancellor, United States v. Morrison, 5 Cir., 247 F.2d 285.' (United States v. Boyd (5th Cir.) 246 F.2d 477, 481 cert. denied (1957) 355 U.S. 889, 78 S.Ct. 261, 2 L.Ed.2d 188.)

In shaping its decree the court, however, must turn to state law to define the property interests involved."

 The taxes covered by the Kansas exception must relate only to taxes arising against the property involved. At the time the term was used in the Kansas Constitution there was no such thing as income, sales, etc. type of tax by the Federal Government or the State Government. Not only that, but in addition, the tax on the homestead property was not severable against any individual homesteader.

In State ex rel. Apt v. Mitchell, 194 Kan. 463, 399 P.2d 556, the Kansas Court about its prior homestead decisions said,

"It suffices to say that Kansas has zealously protected the family rights in homestead property by liberally construing the homestead provision in order to safeguard its humanitarian and soundly social and economic purposes; and nothing less than the free consent of the resident owner of the homestead, and joint consent of husband and wife where the relation exists, will suffice to alienate the homestead, except under the specified exceptions provided in the constitution. (In re Estate of Dittemore, 152 Kan. 574, 576, 106 P.2d 1056; Hawkins v. Social Welfare Board, 148 Kan. 760, 763, 84 P.2d 930.)"

Esther's interest in the homestead is undivided, vested, and indivisible.

We conclude and so hold that Kansas Homestead law as implemented by the Kansas courts, the Supreme Court of the United States, and *Jones* prevents our ordering foreclosure and sale of the Hershberger Homestead. Esther's motion for summary judgment is sustained.