(829 P.2d 600)

No. 66,641

STATE OF KANSAS, *ex rel.* GLENN R. BRAUN, ELLIS COUNTY AT-
TORNEY, OF THE STATE OF KANSAS, *Appellee,* v. A TRACT OF
LAND IN THE NORTHWEST QUARTER OF SECTION FOUR, TOWN-
SHIP ELEVEN SOUTH, RANGE NINETEEN WEST OF THE 6TH P.M.,
ELLIS COUNTY, KANSAS, COMMONLY KNOWN AS 918 NORTH
COUNTY LINE ROAD, ELLIS COUNTY, KANSAS, *Appellant.*

Opinion filed April 3, 1992.

*Richard D. Coffelt,* of Hays, for appellant.

*Glenn R. Braun*, county attorney, and *Robert T. Stephan*, attorney general, for appellee.

*Kyle G. Smith*, assistant attorney general, for *amicus curiae* Kansas Bureau of Investigation.

Before RULON, P.J., GERNON, J., and M. KAY ROYSE, District Judge, assigned.

GERNON, J.: Clarence Gilbert challenges the constitutionality of K.S.A. 1991 Supp. 65-4135(a)(7)(A) of the forfeiture statute. Gilbert contends such section violates Section 12 of the Kansas Bill of Rights and also his homestead rights under Article 15, § 9 of the Constitution of the State of Kansas.

Gilbert entered a plea of no contest to a charge of conspiracy to possess marijuana with intent to sell. The charge grew from a search warrant executed on certain real property owned by Gilbert. Gilbert lived on the property, along with Lisa Brock and their two children. Though never married, Brock and Gilbert had lived together for approximately eight years.

Simultaneously with the pending charges, the State initiated a forfeiture action of the real property. Gilbert then raised the constitutionality of the forfeiture statute before the trial court. The court ruled against Gilbert and ordered forfeiture of the property. Gilbert appeals, raising only the constitutionality of the statute.

The forfeiture provision in question, K.S.A. 1991 Supp. 65-4135(a)(7)(A), provides:

"(a) The following are subject to forfeiture:

. . . .

"(7) all real property, including any building or structure thereon, which is used or intended for use in violation of this act, if such violation constitutes a felony, except:

"(A) A homestead shall not be subject to forfeiture under this section unless the claimant of the homestead has been convicted of a violation of the uniform controlled substances act, K.S.A. 65-4101 *et seq.*, and amendments thereto, or a comparable federal law violation, if such violation constitutes a felony, which involves the unlawful manufacturing, compounding, selling, offering for sale, possessing with intent to sell, processing, importing or exporting of a controlled substance, or has been convicted of conspiracy or attempt to commit such a violation. The homestead shall be subject to forfeiture under this section if the forfeiture proceedings and the conviction arise from the same violation, act, conduct or transaction and, in that event,

the claimant so convicted shall be presumed to have consented to the forfeiture of the homestead by commission of the violation."

## HOMESTEAD EXEMPTION

The homestead exemption, Article 15, § 9 of the Kansas Constitution, provides:

"A homestead to the extent of one hundred and sixty acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon *Provided*, That provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife *And provided further*, That the legislature by an appropriate act or acts, clearly framed to avoid abuses, may provide that when it is shown the husband or wife while occupying a homestead is adjudged to be insane, the duly appointed guardian of the insane spouse may be authorized to join with the sane spouse in executing a mortgage upon the homestead, renewing or refinancing an encumbrance thereon which is likely to cause its loss, or in executing a lease thereon authorizing the lessee to explore and produce therefrom oil, gas, coal, lead, zinc, or other minerals."

Preliminarily, it must be noted that Gilbert's assertion of a homestead claim is not in question, nor does the fact that Gilbert and Brock were unmarried frustrate Gilbert's homestead claim. We have noted: "It has been held that the homestead exemption is not limited to husband and wife, but extends to groups bound together by ties of consanguinity living together as a household." *In re Estate of Fink*, 4 Kan. App. 2d 523, 532, 609 P.2d 211, *rev. denied* 228 Kan. 806 (1980). The State does not challenge Gilbert's right to assert a homestead claim.

## INTERPRETATION OF CONSTITUTIONAL PROVISIONS

In *State ex rel. Schneider v. Kennedy*, 225 Kan. 13, 20-21, 587 P.2d 844 (1978), the Kansas Supreme Court said:

"It is fundamental that our state constitution limits rather than confers powers. Where the constitutionality of a statute is involved, the question presented is, therefore, not whether the act is authorized by the constitution, but whether it is prohibited thereby. [Citations omitted.]

"The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. [Citations omitted.]

"In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. [Citations omitted.]

"Statutes are not stricken down unless the infringement of the superior law is clear beyond substantial doubt. [Citations omitted.]"

The Kansas Supreme Court has also indicated:

" 'A constitution must be interpreted liberally to carry into effect the principles of government which it embodies. It deals broadly with general subjects and its language should not be interpreted in any narrow, refined or subtle sense, but should be held to mean what the words imply to the common understanding of men. In ascertaining the meaning of a constitutional provision courts consider the circumstances attending its adoption and what appears to have been the understanding of the people when they adopted it.'

. . . .

"It is fundamental that the written constitution is paramount law since it emanates direct from the people. [Citation omitted.]" *Wall v. Harrison,* 201 Kan. 600, 603, 443 P.2d 266 (1968) (quoting *Higgins v. Cardinal Manufacturing Co.*, 188 Kan. 11, Syl. ¶ 2, 360 P.2d 456 [1961]).

## KANSAS CASE LAW

The Kansas appellate courts have considered the constitutional homestead exemption on many occasions. Several general rules regarding the homestead exemption have emerged from these cases.

"The homestead was not intended for the play and sport of capricious husbands merely, nor can it be made liable for his weaknesses or misfortunes. It was not established for the benefit of the husband alone, but for the benefit of the family and of society—to protect the family from destitution, and society from the danger of her citizens becoming paupers." *Morris v. Ward,* 5 Kan. *239, *244 (1869).

See *Bohl v. Bohl,* 234 Kan. 227, 230, 670 P.2d 1344 (1983); *Mahone v. Mahone,* 213 Kan. 346, 350, 517 P.2d 131 (1973); *State, ex rel., v. Mitchell,* 194 Kan. 463, 465, 399 P.2d 556 (1965); *Iowa Mutual Ins. Co. v. Parr,* 189 Kan. 475, 480, 370 P.2d 400 (1962).

". . . Kansas has zealously protected the family rights in homestead property by liberally construing the homestead provision in order to safeguard

its humanitarian and soundly social and economic purposes; and nothing less than the free consent of the resident owner of the homestead, and joint consent of husband and wife where the relation exists, will suffice to alienate the homestead, except under the specified exceptions provided in the constitution." *State, ex rel., v. Mitchell,* 194 Kan. at 466.

See *Bohl v. Bohl,* 234 Kan. at 229-30; *Hawkins v. Social Welfare Board,* 148 Kan. 760, 763, 84 P.2d 930 (1938); *West v. Grove,* 139 Kan. 361, 366, 31 P.2d 10 (1934) ("It has been the settled course of the decisions of this court to construe liberally the homestead provision and not to restrict it."); *In re Estate of Fink,* 4 Kan. App. 2d at 528 ("the homestead laws are to be liberally construed in favor of those claiming it").

The constitutional protection accorded to the homestead is greater than that accorded an ordinary statutory exemption. After reviewing the history of the Kansas constitutional convention, the Kansas Supreme Court concluded:

"The manner in which the homestead provision was finally agreed on, and the fact that the views of those who desired to create a homestead limited to a quantity of real estate occupied as a residence by the family of the owner prevailed over the views of those who favored an exemption statute, and the manner and form in which the proposition was submitted to the electorate warrants the conclusion that, although the provision itself uses the word 'exempt,' *it was intended to create and more was created than a simple exemption statute.* The manner in which the homestead may be alienated is expressly stated, as are the circumstances against which the homestead right shall not prevail." *West v. Grove,* 139 Kan. at 366. (Emphasis added).

See *Iowa Mutual Ins. Co. v. Parr,* 189 Kan. at 480.

"The other view of the homestead laws, and the one which we adopt, is that no incumbrance or lien or interest can ever attach to or affect the homestead, except the ones specifically mentioned in the constitution." *Morris v. Ward,* 5 Kan. at \*244. "The homestead provision specifically enumerates *the only circumstances* where a homestead claimant may be deprived of his status." *State, ex rel., v. Mitchell,* 194 Kan. at 467. (Emphasis added.)

" 'The homestead cannot be subjected to forced sale to satisfy debts except in the following situations: (1) To pay taxes; (2) to pay obligations contracted for the purchase of the homestead; (3) to pay obligations contracted for the erection of improvements on the homestead; or (4) any process of law obtained by virtue of a lien given by the consent of both husband and wife.' " *Celco, Inc. of America v. Davis Van Lines, Inc.,* 226 Kan. 366,

370, 598 P.2d 188 (1979) (quoting *Iowa Mutual Ins. Co. v. Parr*, 189 Kan. at 478).

The courts and the legislature do not have the power to create new exceptions to the constitutional homestead protections. See *State, ex rel., v. Mitchell*, 194 Kan. at 466 ("This court has no power to engraft amendments to our state constitution [art. 14, §§ 1, 2], and upon the matter of homestead, not only is legislative aid dispensed with, but legislative interference is foreclosed, and *no conditions may be imposed by statute* upon the enjoyment of the homestead right." [Emphasis added.]); *Iowa Mutual Ins. Co. v. Parr*, 189 Kan. at 479; *In re Estate of Casey*, 156 Kan. 590, 599, 134 P.2d 665 (1943) ("it is not within the equitable power of the courts of this state to declare an indebtedness, except those expressly authorized by the constitution, a lien on the homestead"); *West v. Grove*, 139 Kan. at 363 ("anything that the legislature might see fit to enact or did enact could in no way limit the constitutional provisions with respect to a homestead").

Whether K.S.A. 1991 Supp. 65-4135(a)(7)(A) violates Article 15, § 9 of the Kansas Constitution is an issue of first impression. However, the case law concerning the homestead exemption supports a conclusion that K.S.A. 1991 Supp. 65-4135(a)(7)(A) must be declared unconstitutional.

*State, ex rel., v. Mitchell* was an action "to abate a liquor nuisance" pursuant to K.S.A. 41-806. 194 Kan. at 464. The Kansas Supreme Court concluded the provisions of K.S.A. 41-806, which permit padlocking of a building, could not be applied to a homestead. 194 Kan. at 467. The court concluded:

"The padlocking of a homestead for the violation of any law is not specifically mentioned or even implied in the exceptions above stated. Admittedly, padlocking of a homestead is not a forced sale, but this section is enlarged by the clause 'and shall not be alienated without the joint consent of husband and wife.' The word 'alienated' as used in our constitution means a parting with or surrendering of some interest in the homestead." 194 Kan. at 465.

The court's reasoning included:

"The homestead provision of our constitution sets forth the exceptions and provides the method of waiving the homestead rights attached to the residence. These exceptions are unqualified. They create no personal qualifications touching the moral character of the resident *nor do they undertake to exclude the vicious, the criminal, or the immoral from the benefits so*

*provided.* The law provides for punishment of persons convicted of illegal acts, *but the forfeiture of homestead rights guaranteed by our constitution is not a part of the punishment.*" 194 Kan. at 465-66. (Emphasis added).

The legislature is without authority to create a new exception by statute. Forfeiture proceedings are not mentioned "or even implied" under the exceptions contained in § 9 of Article 15. 194 Kan. at 465.

The only additional exceptions recognized by case law are based upon other constitutional powers granted to the government. For example, in *Brandon v. Brandon,* 14 Kan. *342, *346 (1875), the Kansas Supreme Court held that the constitutional authority of a district court to grant a divorce includes the power to award possession of the homestead.

In *Blankenship v. Blankenship,* 19 Kan. 159, 161 (1877), the court held that a district court has the power to declare an award of alimony to be a lien upon homestead property.

In *Jockheck v. Comm'rs of Shawnee Co.,* 53 Kan. 780, 790, 37 Pac. 621 (1894), the court held that the homestead exemption could not defeat the State's power of eminent domain.

In *Hawkins v. Social Welfare Board,* 148 Kan. 760, the State was able to obtain a lien against a homestead because the statutes creating the lien were consistent with the homestead provision. *Hawkins* involved a statute which granted the State a lien on the real property of an old-age assistance recipient. The statute specified that the lien could not be enforced while the property was being occupied as a homestead. 148 Kan. at 762. The *Hawkins* court reiterated the case law standard "that nothing less than the free consent of the resident owner of the homestead, and joint consent of husband and wife where that relation exists, will suffice to alienate the homestead." 148 Kan. at 763. The court concluded that the acceptance of old-age assistance constituted a consent to grant the State a lien upon the homestead and, therefore, the statute did not violate the constitutional homestead provision. 148 Kan. at 764.

A forfeiture under K.S.A. 1991 Supp. 65-4135(a)(7)(A) is a forced sale which is not specifically authorized by any of the exceptions contained in Article 15, § 9 of the Kansas Constitution. As a result, we conclude that K.S.A. 1991 Supp. 65-4135(a)(7)(A) is unconstitutional.

Reversed.